# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

MAYFLOWER TRANSIT, LLC, et al.,　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiffs,　　　　　　)
　　　　　　　　　　　　　　　　　　)　　　No. 4:11-CV-808 CAS
　　　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
T.J. CAMPBELL, et al.,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　　)

## MEMORANDUM AND ORDER

Pending before the Court is a motion for summary judgment filed by plaintiffs Mayflower Transit, LLC ("Mayflower") and Dodge Moving & Storage Co., Inc. ("Dodge"). Defendant T.J. Campbell, who is proceeding pro se, opposed the motion and filed a one-page response. Defendant Rita Case, who is also proceeding pro se, failed to file a response and the time to do so has expired. For the following reasons, the Court will grant summary judgment to Mayflower against defendant Campbell.

## I.  Background

Plaintiffs Mayflower and Dodge filed a complaint for interpleader and enforcement of possessory carrier and warehouse liens against defendants Campbell and Case. According to the complaint, defendant Campbell entered in a contract with Mayflower to transport household goods from Iowa to Illinois. Before the shipment reached its final destination, however, Mayflower was notified by Campbell that he was unable to secure a residence for delivery. Therefore, under the terms of the contract, the shipment was placed in storage at Dodge's warehouse facility in the St. Louis area. Sometime thereafter, Mayflower received notice that defendant Case had an adverse claim of ownership to some or all of the household goods included in the shipment. Mayflower and

Dodge continued to hold the goods at the warehouse facility, and they filed the above-captioned cause of action.

Plaintiffs filed a two-count complaint against defendants Campbell and Case. In Count I, for interpleader, plaintiffs allege they are innocent stakeholders with regard to the subject shipment and claim no interest in the property, but they seek to obtain an appropriate order from the Court allowing them to sell the household goods in order to satisfy their carrier and warehousemen's liens. In Count II, a claim for carrier and warehousemen's liens, plaintiffs allege that pursuant to 49 U.S.C. § 80109 and the provisions of the contract, they each have a lien on the goods for the unpaid transportation and storage costs and other charges for services and expenses.

In their motion for summary judgment, plaintiffs do not ask the Court to take control of the property and decide ownership and rights. Rather they argue that the Court should find that they were entitled to hold the goods in storage and file an interpleader action pursuant to 49 U.S.C. § 80110. They argue that under the contract and applicable law they are entitled to recover their tariffs and charges for transportation and storage and they have liens against the property under 49 U.S.C. § 80109. For relief, plaintiff ask the Court to enter summary judge in their favor against both defendants in the amount of $11,634.49, plus $16.54 a day for storage costs from October 5, 20011, and "if [d]efendants do not pay [p]laintiffs the amount owed, then [p]laintiffs should be allowed to immediately sell the goods being held in storage so as to satisfy their liens out of the proceeds of the sale." See Doc. 18 at 2.

## II. Standard

The standard applicable to summary judgment motions is well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the

information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Ia. v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence he or she must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 quoting Anderson, 477 U.S. at 248. A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

In passing on a motion for summary judgment, it is not the court's role to decide the merits. The court should not weigh evidence or attempt to determine the truth of a matter. Rather, the court

must simply determine whether a genuine issue of material fact exists.  <u>Bassett v. City of Minneapolis</u>, 211 F.3d 1097, 1107 (8th Cir. 2000).

### III.  Findings of Fact

Local Rule 4.01(E) provides, with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.  E.D. Mo. L.R. 4.01(E).

In support of its motion for summary judgment, plaintiffs submitted a Statement of Uncontroverted Material Facts with citations to the record, and attached to their memorandum in support of summary judgment an affidavit and exhibits, including copies of the contract at issue. Defendants, however, did not respond to plaintiffs' statement of uncontroverted facts or provide the Court with a statement of material facts as to which they contend a genuine dispute exists. Accordingly, defendants have not met the requirements of Local Rule 4.01(E), and they are deemed to have admitted all facts in plaintiffs' statements of uncontroverted facts. <u>Deichmann v. Boeing Co.</u>, 36 F. Supp.2d 1166, 1168 (E.D.Mo. 1999), <u>aff'd</u>, 232 F.3d 907 (8th Cir. 2000), <u>cert. denied</u>, 531 U.S. 877. <u>Cf. Northwest Bank & Trust Co. v. First Ill. Nat'l Bank</u>, 354 F.3d 721, 725 (8th Cir. 2003) (holding that the district court did not abuse its discretion by applying local rules that excluded some of the material facts offered in opposition to a motion for summary judgment).

With this in mind, Court makes the following findings:

Mayflower is a motor carrier of household goods and personal property and is engaged in the performance of interstate carriage for hire. Dodge is a disclosed household goods agent of Mayflower. On or about July 29, 2010, defendant Campbell entered into a contract with Mayflower. Under the contract, Mayflower was to move certain household goods and personal property from Des Moines, Iowa to Fairview Heights, Illinois. Plaintiffs attached to their Statement of Uncontroverted Facts a copy of this contract, which constitutes a Bill of Lading, Estimate/Order of Service, Additional Service Price List and an Addendum.

The Bill of Lading, which Campbell signed, provides: "Customer acknowledges receipt of and accepts this Bill of Lading, including all terms written and printed, stamped or typed on all pages (front and/or back) of this form." The front page of the Bill of Lading sets out the pricing option Campbell selected. It provides:

> Pricing Option W: This shipment is based on a Bound Estimate between the Carrier and the Customer. The On Point Price Certainty Total amount includes the Total Bound Charges for (1) Transportation Services which include loading service, transportation FROM the City/State/Zip listed above TO the City/State/Zip listed above, and unloading services…. PLUS any non-bound charges shown for Storage-In-Transit (SIT), 3rd Party Charges and Advanced Charges. The Carrier must relinquish possession of your shipment upon payment of 100% of the On Point Price Certainty Total price amount even if the total charges for services exceed the amount of the On Point Price Certainty Total price.

> Page 3 of the Bill of Lading provides:

> 1. The Total Bound Charges amount is based on the estimated (Bound) weight and estimated (Bound) services listed up to the quantities shown on the Estimate as included in this Bound amount … The Total Bound Charges amount does not include charges for any items added to the shipment as indicated in the Table of Measurements (Cube Sheet) and/or additional services that are requested or are necessary to accomplish delivery. Storage in Transit ("SIT") charges will be based on the actual weight and the actual number of days in SIT. In the event SIT services provided are in excess of the estimated amount, the cost of these services will be in addition to the amount stated. …

The Total Bound Charges listed on the Bill of Lading is $3,678.36, and it is the same as the "On Point Price Certainty Total" listed on the Bill of Lading.

Page 4 of the Bill of Lading sets out the "CONTRACT TERMS and CONDITIONS of UNIFORM HOUSEHOLD GOODS BILL of LADING."

Section 8 of the Contract Terms provides:

Section 8: (a) … or if the Carrier is unable to deliver the shipment for any reason other than the fault of Carrier, then Carrier may cause the shipment to be stored in a warehouse at the cost of Customer and subject to a lien for all accrued tariff or contract rate schedule charges and other lawful charges. Storage may be, at Carrier's option, in any location that provides reasonable protection against loss or damage. Carrier shall promptly attempt to provide notice by U.S. mail as provided on the face of the Bill of Lading, if so indicated, to the Customer or the party designated on the Bill of Lading to receive notice, if any. (b) If Carrier does not receive disposition instructions within fifteen (15) days from the mailing of notice or if Customer fails or refuses to pay lawfully applicable charges, then Carrier, at its sole option, may offer the shipment for public sale in any manner authorized by law. The amount of sale will be applied toward payment of lawful charges applicable to the shipment and other expense incurred in the public sale. The owner will be responsible for the balance of the charges not covered by the sale of the goods. If there is a balance remaining after all charges and expenses are paid, such balance will be paid to the owner of the property sold hereunder, upon claim and proof of ownership….

The Estimate/Order for Services document defines the term "Storage" in pertinent part, as follows:

STORAGE – If you cannot accept delivery at destination and your shipment must be placed into an agent's warehouse for storage-in-transit, the following charges will be incurred:

FIRST DAY STORAGE-IN-TRANSIT - This charge is for the preparation of the storage vaults, receiving the shipment into storage, and preparation of storage documentation. This charge is applied on a per hundredweight basis, based on the actual weight of the shipment.

EACH ADDITIONAL DAY STORAGE-IN-TRANSIT – The charge is for each additional day after the first day. The charge is applied on a per hundredweight basis, per day, based on the actual weight of the

6

shipment. The Storage-In-Transit period cannot exceed 180 days, after which time the rules and rates of the warehouse will apply.

DELIVERY OUT OF STORAGE-IN-TRANSIT (DRAYAGE) - This charge is for delivering your belongings from the storage warehouse to your residence. This charge is based on the actual weight of the shipment and the location where the service is provided.

In accordance with the contract, Mayflower, via a disclosed household goods agent, loaded and commenced transportation of the subject shipment under the Bill of Lading. On August 6, 2010, after the shipment had been loaded and transported from Iowa to Missouri, but before the shipment had reached its final destination in Illinois, Campbell notified Mayflower that he had been unable to secure a residence for delivery of the shipment. Campbell instructed Mayflower not to deliver the shipment to the address in Fairview Heights, Illinois. He provided, however, no alternative delivery address. Pursuant to the notice and instruction from Campbell, and under the terms of the contract, the shipment was placed in storage-in-transit ("SIT") at Dodge's warehouse facility in St. Louis, Missouri.

In November 2010, while the shipment was in SIT, Mayflower received notice of an adverse claim of ownership from Case. Defendant Case alleged that some or all of the household goods included in the shipment belonged to her. Case requested that Mayflower hold the shipment while she and Campbell tried to resolve the dispute between them. Since receiving Case's notice, Mayflower has kept the goods at the Dodge's warehouse facility. As of October 5, 2011, the estimated interstate transportation charges, SIT charges, and SIT valuation charges due and owing to Plaintiffs totaled $11,663.49. The goods have remained in Dodge's warehouse facility and continued to accrue storage charges at the rate of $16.54 per day. As of the date of this Memorandum and Order, this amounts to an additional $2,431.38, for a total amount due and owing

of $14,094.97. Campbell has not paid any of the outstanding amount owed, and no one else has paid any amount.

## IV. Discussion

Mayflower and Dodge filed this statutory interpleader action pursuant to 49 U.S.C. § 80110. Section 80110 details a common carrier's duty to deliver goods. Under the statute, a common carrier must deliver goods covered by a bill of lading, unless the common carrier establishes there is an "excuse provided by law." 49 U.S.C. § 80110 (a). Also, under the statute, "[i]f a person other than the consignee or the person in possession of a bill of lading claims title to or possession of goods and the common carrier knows of the claim, the carrier is not required to deliver the goods to any claimant until the carrier has had a reasonable time to decide the validity of the adverse claim or to bring a civil action to require all claimants to interplead." § 80110 (d). The statute further provides:

> (e)    If at least 2 persons claim title to or possession of the goods, the common carrier may-
>
> > (1)    bring a civil action to interplead all known claimants to the goods; or
> >
> > (2)    require those claimants to interplead as a defense in an action brought against the carrier for nondelivery.

49 U.S.C. § 80110(e).

An interpleader allows a plaintiff stakeholder to sue all those parties who are or might assert claims to a common fund or property held by the stakeholder, and lets the claimants litigate who is entitled to the funds or property. Dakota Livestock Co. v. Keim, 552 F.2d 1302, 1306 (8th Cir. 1977). Interpleader suits are designed to protect stakeholders not only from multiple liability, but from multiple suits. Id.

In this case, it is clear that Mayflower had a legal excuse for non-delivery of the goods at question – there was no place to deliver the goods. Defendant Campbell instructed Mayflower not to deliver the goods to the original destination, and he did not provide an alternative address. Mayflower was also on notice that defendant Case had an adverse claim to the goods. In order to avoid multiple liability, Mayflower chose to hold the goods and file an interpleader action, as Mayflower was entitled to do under the statute.

The difficulty in this case, however, is that it has not been established to the Court's satisfaction who has title to the goods Mayflower and Dodge are holding in storage. It is undisputed that Mayflower entered into a contract with defendant Campbell to deliver household goods from Iowa to Illinois. Whether defendant Campbell was the rightful owner of these goods when he surrendered the goods for shipping is not established. Mayflower received notice that Case had an adverse claim, but this was only notice of a possible adverse claim. Mayflower does not know who is the rightful owner of any or all of the goods, which is why it filed an interpleader action in the first place. But plaintiffs have not asked the Court to determine who has ownership of the goods, rather they request that the Court find plaintiffs have liens on the goods in question. Based on the record before it, the Court cannot determine ownership of the goods in question. There is nothing in the record to indicate what is the basis of defendant Case's claim to the goods, and defendants Campbell and Case, who are both proceeding pro se have been no help in this regard. They each filed one sentence answers to the complaint, and they have not responded to discovery requests.

The Court finds, however, that it need not decide who is the rightful owner of the goods in question in order to decide plaintiffs' motion for summary judgment. The undisputed facts establish Mayflower is entitled to be paid. Pursuant to the contract and applicable law, Mayflower is entitled to recover its transportation and storage costs, and it has a lien on Campbell's property. A bill of

lading, which Campbell executed, is the basic contract between the shipper/consignor and the carrier, and its terms and conditions bind the parties. <u>Orscheln Brothers Truck Lines, Inc. v. Ferguson Mfg., Inc.</u>, 793 S.W.2d 525 (Mo. Ct. App. W.D. 1990). It is a "time-honored rule that [when a carrier is not paid for lawful charges], no 'act or omission of the carrier (except the running of the statute of limitations) [will] estop or preclude it from enforcing payment of the full amount by a person liable therefore.'" <u>Southern Pac. Transp. v. Commercial Metals Co.</u>, 456 U.S. 336, 352 (1982) (citing <u>Louisville & Nashville R. Co. v. Central Iron Co.</u>, 265 U.S. 59, 65 (1924)). Unless the bill of lading provides to the contrary, the consignor remains primarily liable for the freight charges. <u>Southern Pacific</u>, 456 U.S. at 343. <u>See</u> <u>also</u> <u>Yazoo & M.V.R. Co. v. Picher Lead Co.</u>, 190 S.W. 387, 388 (Mo. App. 1917). Furthermore, Mayflower, as the common carrier, has a lien pursuant to 49 U.S.C. § 80109.[1]

Under the bill of lading and other documents, defendant Campbell agreed to pay Mayflower interstate transportation charges. In addition, Campbell agreed that if he could not accept delivery, and his shipment had to be placed into storage, he would pay Mayflower for storage charges. As of the date of this Memorandum and Order, the estimated interstate transportation charges, SIT

---

[1] A common carrier issuing a negotiable bill of lading has a lien on the goods covered by the bill for--

> (1) charges for storage, transportation, and delivery (including demurrage and terminal charges), and expenses necessary to preserve the goods or incidental to transporting the goods after the date of the bill; and

> (2) other charges for which the bill expressly specifies a lien is claimed to the extent the charges are allowed by law and the agreement between the consignor and carrier.

49 U.S.C. § 80109.

charges, SIT valuation charges, and other storage charges due and owing to Mayflower totals $14,094.97. The Court will grant Mayflower summary judgment against defendant Campbell in the amount of $14,094.97.

This does not decide, however, all the issues raised in the summary judgment motion. Plaintiffs ask that the Court enter judgment against defense Case as well. Defendant Case, however, was not a party to the contract. Plaintiffs cite nothing in the record nor have they provided legal authority to support imposing liability against defendant Case. Consequently, plaintiffs' motion for summary judgment as to defendant Case will be denied.

Furthermore, the Court finds plaintiff Dodge is not entitled to summary judgment. It is undisputed that Dodge was a disclosed agent of Mayflower, but Dodge was not a party to the contract with Campbell. Plaintiffs cite no legal authority in support of their argument that Dodge has a lien on the property that is separate and apart from Mayflower's lien under the bill of lading, nor have they pointed to any facts in the record to support Dodge's claim. The Court has examined the bill of lading and other documents that comprise the contract, and no where in these documents does it provide that Dodge would have an enforceable lien or claim against Campbell for storage charges.[2] In addition, 49 U.S.C. § 80109, to which plaintiffs cite in support of their motion, addresses common carrier liens under bills of lading. This section does not address warehouse liens and whether a disclosed agent is entitled to a lien in addition to the lien of the common carrier. Based on the record before it and the authority provided, the Court cannot grant summary judgment in Dodge's favor.

---

[2] The Court does note that the copies of the bill of lading and other documents plaintiffs provided the Court in support of their motion for summary judgment are poor copies, and some of the language in the bill of lading was illegible.

Plaintiffs also ask that if defendants cannot immediately pay the amount owed, then the Court should allow them to sell or otherwise dispose of the property so as to satisfy their lien out of the proceeds of the sale. The Court cannot grant this request because plaintiffs have not provided the Court with the necessary information and authority to order such a sale. Mayflower will have a judgment against defendant Campbell. In the event Mayflower believes a sale is necessary to collect its judgment, it may follow appropriate post-judgment procedures to effect such a sale.

The Court also notes there is a pending motion to compel against defendants Campell and Case. Plaintiffs, however, did not comply with the undersigned's requirements and file a notice of hearing to set the dispute on the Court's monthly discovery docket. Pursuant to the Court's requirements, the Court will deny the motion without prejudice, as the motion has been on file for more than forty-five days. A copy of the Court's requirements can be found at http://www.moed.uscourts.gov/sites/default/files/cas.pdf .

In conclusion, there is an April 9, 2012 trial date in this matter. Judgment will be entered in Mayflower's favor against defendant Campbell, but there remains outstanding claims. The Court will order plaintiffs to file a memorandum with the Court by March 5, 2012, notifying the Court whether plaintiffs will proceed to trial on the remaining claims.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs Mayflower Transit, LLC and Dodge Moving & Storage Co., Inc.'s motion for summary judgment is **GRANTED** in part and **DENIED** in part. Plaintiff Mayflower Transit, LLC is entitled to summary judgment against defendant T.J. Campbell as to Count II of the complaint. The motion is denied in all other respects. [Doc. 16]

**IT IS FURTHER ORDERED** that plaintiffs Mayflower Transit, LLC and Dodge Moving & Storage Co., Inc.'s motion to compel is **DENIED** without prejudice. [Doc. 24]

**IT IS FURTHER ORDERED** that on or before March 5, 2012, plaintiffs Mayflower Transit, LLC and Dodge Moving & Storage Co., Inc. shall file a memorandum with the Court, notifying the Court whether plaintiffs intend to proceed to trial on the remaining claims.

An appropriate Partial Judgment will accompany this Memorandum and Order.


_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  29th   day of February, 2012.